### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
**STEPHEN D. GILL,**                    )
                                        )
          **Plaintiff,**                )
                                        )
          **v.**                        )          **Civil Action No. 16-11720-DJC**
                                        )
**WILLIAM F. GALVIN, Secretary of the** )
**Commonwealth of Massachusetts,**      )
                                        )
          **Defendant.**                )
                                        )
_____)

### MEMORANDUM AND ORDER

**CASPER, J.**                                              **September 7, 2016**

## I.     Introduction

Plaintiff Stephen D. Gill ("Gill") brings claims against Defendant William F. Galvin ("Galvin"), Secretary of the Commonwealth of Massachusetts, based upon the application of certain election laws, Mass. Gen. L. c. 53, §§ 6, 10 & 48 ("affiliation/disaffiliation laws"), barring him from being listed on the ballot as an unenrolled candidate in the upcoming Plymouth and Norfolk District Senate ("Senate") general election.  D. 1.  Specifically, Gill brings claims for violations of his rights under Article VI (Count I) and the First (Count II), Fifth (Count III) and Fourteenth Amendments (Count IV) of the United States Constitution and seeks injunctive relief (Count V).  Id. at 8-14.  On August 24, 2016, Gill filed this action and has moved for a preliminary injunction, D. 2, to unenroll him from the Republican Party and to allow him time to satisfy the necessary prerequisites and to file nomination papers to be listed on the ballot as an unenrolled candidate in the Senate general election to be held on November 8, 2016.  Galvin opposes the

motion, D. 9, Gill filed a reply, D. 11, and the Court heard the parties on the pending motion at a hearing on September 1, 2016, D. 12.  For the reasons explained below, Gill's motion, D. 2, is DENIED.

## II.    Legal Standard

To obtain a preliminary injunction, Gill has the burden to establish:  (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest.  Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  A "preliminary injunction is an 'extraordinary and drastic remedy,'" that is only warranted upon the movant's showing of all four of the considerations enumerated above.  Voice of the Arab World, Inc., 645 F.3d at 32 (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)).

## III.    Factual Background

Unless otherwise noted, the relevant facts are not disputed.  This action concerns the election for the Senate seat vacated by Robert L. Hedlund ("Hedlund").  On November 3, 2015, Hedlund was elected Mayor of Weymouth.  D. 9 at 5-6.  Because Hedlund could not occupy the Senate seat and also serve as Mayor, see id., he resigned his seat on December 24, 2015, effective January 4, 2016, D. 9-1 at 6.  On January 21, 2016, the Massachusetts Senate announced a special election for the seat to be held on May 10, 2016, 9-2 ¶ 4, with the primaries for the special election to be held on April 12, 2016, id. ¶¶ 3-5.  According to the deadlines announced by the Senate at that time, nomination papers for the special election were due March 8, 2016.  D. 1 at 18; D. 9-2 ¶ 5.  By operation of the affiliation/disaffiliation laws, candidates who wanted to be listed on the special election primary ballot as a party candidate would have had to enroll or affiliate with a party as of December 8, 2015 and through the due date for nomination papers.  D. 9-2 ¶¶ 7-10; see

§ 48.  Similarly, for a candidate to be listed on the special general election ballot as an unenrolled candidate, he or she would have had to be unenrolled from a political party as of December 8, 2015 and through the due date for nomination papers.  D. 9-2 ¶¶ 7-10; see § 6.  On March 7, 2016, Gill filed his nomination papers to have his name printed on the ballot for the Republican special election primary.  D. 9-2 ¶ 15.  Gill did not win the April 12, 2016 special election Republican primary.  Id.  His opponent in the primary, Patrick M. O'Connor, won the primary and then the special election to the Senate seat.  Id.; D. 9-1 ¶ 5.

There is now an election looming for the same Senate seat now filled by Senator O'Connor.  The deadline for candidates to file nomination papers to have their names printed on the primary ballot for the general election was May 31, 2016.  D. 9-2 ¶ 8.  By operation of the affiliation/disaffiliation laws, a candidate who wanted to be listed on the general election ballot as an unenrolled candidate would have had to unenroll from their political party as of March 1, 2016 through the due date for the nomination papers.  Id. ¶¶ 9, 11; see § 6.  On May 31, 2016, Gill filed his nomination papers to have his name printed on the ballot for the Republican general election primary, to be held on September 8, 2016.  D. 9-2 ¶ 17.  On June 3, 2016, Gill avers that he contacted the Elections Division of the Secretary of State to inquire about the affiliation/disaffiliation laws and deadlines, to inquire about whom he should contact if he wanted to challenge those deadlines and indicated that he intended to challenge those deadlines.  D. 11 ¶¶ 9-11.  The Secretary does not concede that Gill made the June 3rd call, but notes that if such contact was made it was not with Michelle Tassinari ("Tassinari"), Director of the Elections Division, Hr'g Tr. at 50, whom Gill did not contact until July 12, 2016, D. 9-2 ¶ 18.  On July 11, 2016, various press outlets reported that Hull Selectwoman Joan Meschino—who had filed nomination papers as a Democrat for the Senate seat—was pulling out of the primary race to run a write-in

campaign for a representative seat.  D. 9 at 7.  The next day, Gill contacted Tassinari and requested that his name be removed from the Republican primary ballot—the primary election which is set to occur tomorrow, September 8, 2016—and instead be printed on the general election ballot as an unenrolled candidate.  D. 9-2 ¶ 18.  On July 13, 2016, Tassinari explained to Gill that because he was previously enrolled in a political party, the affiliation/disaffiliations laws precluded him from being listed on the general election ballot as an unenrolled candidate.  Id. ¶¶ 19-20.  Gill subsequently filed this action and a preliminary injunction on August 24, 2016.  D. 1; D. 2.

At base, Gill's complaint and motion stems from him running and losing as a Republican in the Senate special election primary, D. 9-2 ¶ 15, his current listing on the ballot as a Republican in the upcoming Senate primary, id. ¶ 17, and his desire to be listed as an unenrolled candidate on the Senate general election ballot, despite the affiliation/disaffiliation laws, id. ¶¶ 18-20; D. 11 ¶¶ 9-14.

## IV.    Discussion

### A.    Gill Has Failed to Show a Reasonable Likelihood of Success on the Merits of His Claims

In addressing the likelihood of success on the merits, the same standards apply to all of Gill's constitutional claims.  The parties agree that not all restrictions on the right to vote and to politically associate are unconstitutional.  D. 3 at 4; D. 9 at 10-12; see Burdick v. Takushi, 504 U.S. 428, 433 (1992); Storer v. Brown, 415 U.S. 724, 729 (1974).  The parties also agree that to resolve Gill's claims the Court weighs "the character and magnitude" of the burden the affiliation/disaffiliation laws impose on Gill's right to freely associate against the "interests the state contends justifies that burden."  D. 3 at 5; D. 9 at 11; see McClure v. Galvin, 386 F.3d 36, 41 (1st Cir. 2004).  In doing so, the Court must consider the extent to which the state's concerns make the burden necessary.  D. 3 at 5, 8-9; D. 9 at 11; see McClure, 386 F.3d at 41.  Severe burdens

imposed on a plaintiff's right to run for office "must be narrowly tailored and advance a compelling state interest" whereas lesser burdens "trigger less exacting review" such that the "important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." McClure, 386 F.3d at 41 (quoting Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997)) (internal quotation marks omitted).

Gill appears to raise two constitutional objections about the affiliation/disaffiliation laws as applied to him.  First, he objects to the effective December 8, 2015 deadline to unenroll or disaffiliate with a party to be listed as an unenrolled candidate in the Senate special election that was not announced until January 21, 2016.  Gill claims that because he was not, and could not have been, on notice of the effective disaffiliation deadline he was unable to disaffiliate from the Republican Party and was forced to run in the special primary election. D. 3 at 7-8.  Second, he further contends that the "domino effect" of his inability to disaffiliate for the special primary held on April 12, 2016 was that he was unable to disaffiliate as of March 1, 2016 to be listed on the ballot as an unenrolled candidate in the general election.  He argues that the effect of the affiliation/disaffiliation laws, as applied to him, are overly burdensome and violate his constitutional right to associate (or not) with the political party of his choosing in seeking public office.

While it is true that the December 8, 2015 date was set retroactively once the Massachusetts Senate adopted an order on January 21, 2016 requiring that the special election was to be held on May 10, 2016, D. 9-2 ¶¶ 3-5, such statutory requirement is not unconstitutionally burdensome.  First, there is evidence in the record that the general public was on notice of the likelihood of a special election for this Senate seat as early as November 3, 2015, and before the December 8, 2015 deadline, when Hedlund, who held the seat, was elected to another public office.  D. 9 at 5-

6 n.3 (citing November 3, 2015 Patriot Ledger article anticipating a special election in light of Hedlund's election as mayor).  Although Gill has described himself as a political novice and was on inactive duty travel training in Rhode Island on that date, D. 11 ¶ 4, at 18, he does not explain or assert that he did not have access to such publicly reported information.  Gill could have reasonably anticipated the special election and could have unenrolled from the Republican Party as soon as Hedlund won the mayoral race or in the month that followed this event and before the December 8th deadline.  Second, and perhaps more significantly, once Gill became aware of the December 8th deadline and his inability to disaffiliate in time, he could have run a write-in campaign in the special election.  D. 9 at 10; 9-2 ¶ 12; see Mass. Gen. L. c. 53, §§ 34, 40.  In doing so, he could have still run in the special election and disaffiliated in time to be listed as an unenrolled candidate on the general election ballot—the relief he now seeks—avoiding the purported "legal impossibility."  Moreover, Gill is still able to run a write-in campaign in the upcoming general election.  D. 9-2 ¶ 12; see §§ 34, 40.

Gill has thus not demonstrated here that the burden placed upon his right to freely associate or disassociate, D. 3 at 5, 7-8, 10, was a severe burden requiring heightened review.  See McClure, 386 F.3d at 42 (discussing Storer, 415 U.S. at 734); Metros v. Sec'y of Commonwealth, 396 Mass. 156, 162 (1985) (discussing Opinion of the Justices, 368 Mass. 819, 822-23 (1975)).

Applying a "less exacting review" given the "lesser burden[ ]," McClure, 386 F.3d at 41, Galvin's asserted regulatory interest in protecting voters and candidates by (1) ensuring unenrolled candidates listed on ballots are in fact "independent of party affiliations," McClure, 386 F.3d at 44, and  (2) preventing the "confusion and ballot congestion" caused by "party defectors . . . avoid[ing] the inconvenience or jeopardy of a party primary" from  being listed on ballots, Metros, 396 Mass. at 162, D. 9 at 16-17, are sufficiently important to justify the restrictions at issue.

Indeed, the First Circuit in <u>McClure</u> concluded that the affiliation/disaffiliation law at issue here, § 6, was not severe and unconstitutionally burdensome in requiring candidates seeking to be listed on the ballot as an unenrolled candidate to plan 90-days ahead of the required filing deadline.  <u>See McClure</u>, 386 F.3d at 42; <u>see</u> <u>Metros</u>, 396 Mass. at 162 (rejecting constitutional challenge to Mass. Gen. L. c. 53, §§ 6, 37 & 48 where plaintiff wished to be listed on the ballot as an unenrolled candidate after being enrolled with the Democratic Party and voting in the Democratic presidential primary).  Weighed against the governmental interests, requiring Gill to plan ahead regarding his enrollment or affiliation for the special election and how it would possibly preclude him from being listed on the ballot as an unenrolled candidate in the general election—while still allowing him to run a write-in campaign—is not unconstitutionally burdensome.

Even under heightened review, Gill has not met his burden in demonstrating that the affiliation/disaffiliation laws are not narrowly tailored to advance the asserted compelling state interests.  The laws do no more than is necessary to ensure that candidates reasonably plan ahead in deciding their political affiliations and prevent unsuccessful candidates, such as Gill, who recently appeared on the ballot as a party candidate in a special election—without objection and in lieu of a write-in campaign—from later appearing on the general election ballot as an unenrolled candidate.  For all of these reasons, Gill has not shown a reasonable likelihood of success on the merits.

**B.**    **<u>Gill Has Also Failed to Show that He Will Suffer Irreparable Harm if the Injunctive Relief He Seeks is Not Granted</u>**

Gill asserts that he will be irreparably harmed by not appearing on the Senate general election ballot as an unenrolled candidate because his right to freely associate politically will be infringed.  D. 3 at 11.  As discussed above, however, Gill can still lodge a write-in campaign as an unenrolled candidate and exercise this right.  <u>See</u> <u>Libertarian Party v. Bond</u>, 764 F.2d 538, 542-43

(8th Cir. 1985) (recognizing that voters may politically associate by way of a write-in campaign). While a write-in campaign might be more logistically challenging to execute, such an option still allows Gill and his supporters to associate politically.  Additionally, as noted by Galvin, D. 9 at 9-10, Gill's failure to act sooner—as early as January 21, 2016, when the retroactive disaffiliation deadline of which he complains was published online, D. 9-2 ¶ 4, or even as late as July 13, 2016 when he received a response about his July 12th inquiry from the Director of the Elections Division, id. ¶ 19—undercuts his argument the he will suffer irreparable harm.  See Voice of the Arab World, Inc., 645 F.3d at 35 (noting that "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury") (internal quotation marks and citation omitted)).  Gill not only failed to raise the claims he now presses months ago (and before the primary ballots for the upcoming election were printed and thousands of the absentee ballots for same had been returned, D. 9 at 9, 19-20), he ran a campaign as a Republican in the primary for the special election and submitted his paperwork to do the same for tomorrow's primary without such objection.  D. 9-2 ¶ 15.  Gill has thus failed to show that he is likely to suffer irreparable harm.

## C.      The Balance of Equities Do Not Tip in Gill's Favor

While Gill argues that the balance of equities tips in his favor because Galvin fails to point to any compelling state interest to justify application of the affiliation/disaffiliation laws, D. 3 at 11, the Court has already determined that the governmental interests in fair and orderly elections advanced by Galvin are compelling.  Galvin argues that the balance tips in his favor where granting Gill's preliminary injunction would require expending an excessive amount of time and money in reprinting and resending the revised primary ballots, potentially causing delays in the general election ballots arriving to military personnel outside of Massachusetts, and otherwise potentially

impacting the 3,700 individuals who have already cast their vote, via absentee ballot, for or against Gill in tomorrow's primary election.  D. 9 at 9, 19-20; D. 9-2 ¶ 22.  Based upon the record before the Court, the balance of equities tips in Galvin's favor.

**D.**   **Gill Has Also Not Shown How the Extraordinary Relief He Seeks Now is in the Public Interest**

Gill argues that it is in the public interest that the Court grants the relief he seeks because listing him as an unenrolled candidate on the general election ballot would give voters an additional choice in exercising "their franchise" and expressing their political views.  D. 3 at 11-12.  There is no such benefit, however, where Gill may still run as a write-in candidate in the general election. See Libertarian Party, 764 F.2d at 542.  The Court, moreover, agrees with Galvin that it is in the public interest to protect the integrity of the elections process and reasonable expectation of voters by preventing Gill, already listed on the Republican primary ballot for tomorrow's primary election, from getting a "second bite" and being listed as an unenrolled candidate on the general elections ballot, particularly when he may still have access to that general election ballot as a write-in candidate.   D. 9 at 17-18.  Thus, the Court concludes that Gill has not shown that a preliminary injunction is in the public interest.

**V.**   **Conclusion**

For the foregoing reasons, Gill's motion for a preliminary injunction, D. 2, is DENIED and his related motions for consolidation of a jury trial and hearing on a preliminary injunction, D. 4, are DENIED as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge