UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN D. GILL,<br><br>        Plaintiff,<br><br>v.<br><br>WILLIAM F. GALVIN, Secretary of the<br>Commonwealth of Massachusetts,<br><br>        Defendant. | Civil Action No. 16-11720-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                        May 19, 2017

### I. Introduction

Plaintiff Stephen D. Gill ("Gill") has filed this lawsuit against Defendant William F. Galvin, Secretary of the Commonwealth of Massachusetts ("Galvin") alleging constitutional violations concerning the affiliation and disaffiliation state statutes and their effect on Gill's ability to seek election as an unenrolled candidate. D. 1. Galvin has moved to dismiss. D. 15. For the reasons stated below, the Court ALLOWS the motion.

### II. Standard of Review

To consider a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).

1

First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103.

### III. Factual Background

Unless otherwise noted, the following factual allegations are from the complaint and, for the purposes of this motion, the Court presumes them to be true. This case concerns elections for the Plymouth and Norfolk Senate seat in the Massachusetts Senate ("Plymouth/Norfolk Seat"), which became vacant on January 4, 2016. D. 1 ¶ 6. Under three interrelated state statutes governing election procedures, a potential candidate in Massachusetts must be continually affiliated with a political party or disaffiliated from all political parties for ninety days prior to the date nomination papers are due to run in a party primary or to be listed on the ballot as an "unenrolled" (sometimes referred to as an independent) candidate, respectively. See Mass. Gen. L. c. 53, §§ 6, 10, 48 (the "Disaffiliation Statutes"); D. 1 ¶¶ 12-13 & n.3. On January 21, 2016, the State Senate determined that a special election to serve the remainder of the Plymouth/Norfolk Seat term (the "Special Election") would be held on May 10, 2016, and party primaries for the Special Election would be held on April 12, 2016. D. 1 ¶¶ 7, 8, 22. Nomination papers for the Special Election were due on March 8, 2016. D. 1 ¶ 8, Ex. A. Candidates who wished to be listed on the ballot as unenrolled or independent candidates unaffiliated with a political party were required to be unenrolled from all political parties as of December 8, 2015, and to maintain that

status through the March 8, 2016 due date for nomination papers. Mass. Gen. L. c. 53, § 6; D. 1, Ex. A.

Gill alleges that he became aware of the vacancy of the Plymouth/Norfolk Seat while on active naval duty and intended to run in the Special Election as an unenrolled candidate. D. 1 ¶ 15. He thereafter discovered that he would not be able to run as such because he had not unenrolled from the Republican Party by December 8, 2015. D. 1 ¶¶ 17-18. Gill filed for and participated in the Republican primary for the Special Election, but lost that contest. D. 1 ¶¶ 19-22. By participating in the Republican primary for the Special Election, Gill was thereby precluded from entering the November 2016 general election for the Plymouth/Norfolk Seat as an unenrolled candidate (the "General Election"), because the disaffiliation deadline for this election was March 1, 2016. D. 1 ¶¶ 28-30. At the time of filing this lawsuit, Gill had filed the appropriate nomination papers to run in the Republican primary for the General Election, but sought injunctive relief from this Court to order Galvin to list Gill as an unenrolled candidate on the General Election ballot. D. 1 ¶¶ 31-33, 43-45. The Court, after briefing and a motion hearing, denied that relief. D. 14. Thereafter, Gill ran in the Republican primary for the General Election and therefore withdrew his nomination papers to be listed as an unenrolled candidate in the General Election on November 8, 2016. See D. 1 ¶ 31; D. 19 at 3.[1]

## IV. Procedural History

Gill instituted this action on August 24, 2016. D. 1. After full briefing and argument, the Court denied Gill's motion for a preliminary injunction on September 7, 2016. D. 14. Galvin has now moved to dismiss. D. 15.

---

[1] Under Fed. R. Evid. 201, "judicial notice can be taken of the dates that public general elections take place." Delgado v. Chardon, No. CIV. 12-1450 MEL, 2015 WL 4924369, at *9 (D.P.R. Aug. 18, 2015) (citing Piccolo v. N.Y.C. Campaign Fin. Bd., No. 05–CV–7040, 2007 WL 2844939, at *2 n.2 (S.D.N.Y. Sept. 28, 2007).

3

## V. Discussion

### A. <u>Mootness</u>

Gill appears to concede that his claim for injunctive relief may be moot at this point. See D. 19 at 4. However, Gill argues his claims for declaratory relief are not moot because they are claims that are capable of repetition, yet evade review because of the timeline for elections. Id. at 4-5.

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); see Duclerc v. Massachusetts Dept. of Correction, 10-cv-12050-DJC, 2012 WL 6615040, at *5 n.5 (D. Mass. Dec. 18, 2012) (recognizing that mootness is "'the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)'" (quoting Becker v. Fed. Election Comm'n, 230 F.3d 381, 386 n.3 (1st Cir. 2000)). A case is moot when "intervening events make it impossible to grant the prevailing party effective relief." Pine Tree Med. Assocs. v. Sec'y of HHS, 127 F.3d 118, 121 (1st Cir. 1997) (citation and internal quotation marks omitted).

As to Gill's claim for injunctive relief, Galvin's argument is persuasive. A claim for injunctive relief is moot if the Court "cannot grant any 'effectual relief' by ordering the injunction" because "the parties no longer have a legally cognizable stake in the outcome." In re Light Cigarettes Marketing Sales Practices Litigation, 271 F.R.D. 402, 422 (D. Me. 2010) (quoting N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 73 (1st Cir. 2006)) (internal quotation marks omitted)); see also Davidson v. Howe, 749 F.3d 21, 26 (1st Cir. 2014) ("a court can provide no meaningful relief to the challenging party since, once the plan ceases to be operative, there is no plan left to enjoin"); Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53 (1st Cir. 2013) ("[o]nce a contract has expired, there is no ongoing conduct left for the

court to enjoin"). By the time Galvin's motion had become ripe, the election had already occurred. See D. 19 at 3; Metros v. Sec'y of Com., 396 Mass. 156, 160 n.6 (1985) (finding request for injunction moot because "plaintiffs sought by that motion and application specific relief to allow Metros's name to be printed on the 1984 ballot. . . . [t]hat specific interlocutory relief cannot be granted"). Therefore, Gill's claim for injunctive relief is dismissed as moot.

The question of Gill's claims for declaratory relief requires different analysis. A claim seeking a declaratory judgment is moot if there is no substantial controversy between the parties having adverse legal interests of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Am. Civil Liberties Union of Massachusetts, 705 F.3d at 54 (quoting Preiser v. Newkirk, 422 U.S. 395, 402 (1975)). However, seemingly moot claims for declaratory relief may be considered "capable of repetition, yet evading review." S. Pac Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911). This "well-established" but "narrow" exception has been applied in cases arising from election procedures. Barr v. Galvin, 626 F.3d 99, 105 (1st Cir. 2010) (citing Storer v. Brown, 415 U.S. 724, 737 n.8 (1974); Moore v. Ogilvie, 394 U.S. 814, 816 (1969)); Am. Civil Liberties Union of Massachusetts, 705 F.3d at 57 (listing elections as a discrete example of "'inherently transitory' claims the Supreme Court has recognized as likely to evade review"). To show a claim is capable of repetition yet evading review, a plaintiff must show "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Barr, 626 F.3d at 105 (quoting FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007)).

In "[d]isputes concerning ballot access procedures," the first prong for 'evading review' is satisfied because such procedures "are often time-sensitive, and the temporal parameters are

5

sometimes too short to allow the issues to be fully litigated within a single election cycle." Barr, 626 F.3d at 106 (citing Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 187 (1979); Moore, 394 U.S. at 816). This case is no different with respect to Gill's claims for declaratory relief. Before the general election, the parties were only able to brief and argue, and the Court was only able to issue a decision denying Gill's motion for a preliminary injunction. See D. 14 (order denying motion for preliminary injunction entered Sept. 7, 2016); D. 15 (motion to dismiss filed); D. 19 (opposition to motion to dismiss filed). Therefore, the parties have not had an opportunity to fully litigate the issues within a single election cycle. The 'evading review' prong is satisfied.

With respect to the 'reasonable expectation' prong, "a party arguing against mootness must show either 'a reasonable expectation or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party.'" Barr, 626 F.3d at 105 (quoting Wis. Right to Life, Inc., 551 U.S. at 463)). Gill relies upon Int'l Org. of Masters, Mates & Pilots v. Brown, 498 U.S. 466, 473 (1991), in which the Supreme Court held that a claim relating to union election procedures was capable of repetition yet evaded review because, *inter alia*, the "[r]espondent has run for office before and may well do so again." Id. Similarly, in Metros v. Sec'y of Commonwealth, 396 Mass. 156, 159 (1985), the Supreme Judicial Court held that a claim relating to the Disaffiliation Statutes by a candidate prevented from appearing on the ballot as an independent candidate was capable of repetition and, therefore, satisfied the exception to the mootness doctrine. Id. The candidate had been barred from unenrolling from her party to run as an independent candidate for a State Senate seat due to her participation as a voter in the presidential primary. Id. at 157-59. Because the presidential primary and the deadline for filing nomination papers for a State Senate election were less than ninety days apart, "[a]s long as a

6

ninety-day disaffiliation period applies [in Massachusetts], voting in the partisan presidential primary in March will disqualify an intended unaffiliated candidate whose nomination papers are due in May. The question is not unlikely to arise again." Id. at 160. Here, the Plymouth/Norfolk Seat became vacant following the prior Election Day in November 2015. See Matt Murphy, Wicked Local, Weymouth Mayor-elect Hedlund Resigns Senate Seat, http://norwell.wickedlocal.com/news/20151224/weymouth-mayor-elect-hedlund-resigns-senate-seat (last visited, May 15, 2017). The State Senate is, within its discretion, expected to fill such vacancies by special election as soon as possible. See, e.g. Wyler v. Sec'y of Com., 441 Mass. 22, 27 (2004) (state law providing discretion to State Senate for scheduling special elections "assure[s]. . . that vacancies will be filled as soon as possible after their occurrence, thus maintaining, to the best extent possible, continuity of office").

While Gill has offered no 'demonstrated probability' that the same controversy presented here will occur again as to any future candidacy by him, Gill's brief implies that he will run for office again and could face the same bar in a future special election. See D. 19 at 5. Assuming *arguendo* that Gill's claims for declaratory relief are capable of repetition yet evade review, and "a live dispute remains with respect to the constitutional questions at issue in this case," Barr, 626 F.3d at 106, the Court turns to the merits of Galvin's motion as to the declaratory claims.

### B. <u>Failure to State a Claim</u>

Not all restrictions on the right to vote and to associate politically are unconstitutional. <u>See</u> <u>Burdick v. Takushi</u>, 504 U.S. 428, 433 (1992); <u>Storer v. Brown</u>, 415 U.S. 724, 729 (1974). A state election law that burdens ballot access is not measured against a "static" or "bright line" standard. <u>McClure v. Galvin</u>, 386 F.3d 36, 41 (1st Cir. 2004) (citing <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 359 (1997)). The Court must "weigh the 'character and magnitude' of the burden the [s]tate's rule imposes [on rights to vote and run for office] against the interests the state contends justifies that burden, and consider the extent to which the [s]tate's concerns make the burden necessary." <u>McClure</u>, 386 F.3d at 41 (quoting <u>Timmons</u>, 520 U.S. at 358). More severe burdens must be "narrowly tailored and advance a compelling state interest" while "[l]esser burdens . . . trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" <u>Id.</u>

The parties' interests to be considered by the Court are the same as they were in consideration of Gill's motion for a preliminary injunction. Gill argues that his right to associate freely as an unenrolled candidate through disaffiliation has been infringed in both the Special Election and General Election. <u>See</u> D. 19 at 7. Gill argues this is especially the case with respect to his exclusion as an unenrolled candidate from the Special Election, where he argues the deadline for disaffiliation, December 8, 2015, had already passed by the time the State Senate seat had become vacant and the date for the Special Election was set in January. <u>Id.</u> at 9. Galvin argues that the state's legitimate interests are served by precluding candidates such as Gill from being listed on the ballot in both a party primary and in the general election as unenrolled candidates. <u>See</u> D. 16 at 10-12.

As the Court has already explained in its prior opinion denying Gill's motion for a preliminary injunction, this statutory scheme acts as a "sore loser" law, which the First Circuit has said "ensur[es] unenrolled candidates listed on ballots are in fact 'independent of party affiliations,'" D. 14 at 6 (quoting McClure, 386 F.3d at 44), and the Supreme Judicial Court has said "prevent[s] the 'confusion and ballot congestion' caused by 'party defectors . . . avoid[ing] the inconvenience or jeopardy of a party primary' from being listed on ballots" D. 14 at 6 (quoting Metros, 396 Mass. at 162). In McClure, the First Circuit affirmed the dismissal of a complaint with similar First and Fourteenth Amendment claims challenging the ninety-day period of the Disaffiliation Statutes. 386 F.3d at 40. The First Circuit applied the lower-threshold balancing test described in Timmons, reasoning that the "burden imposed on McClure's rights here is [] not severe" and therefore the "state's important regulatory interests . . . are sufficient to justify that burden." McClure, 386 F.3d at 41. Being forced to "think ninety days ahead before the filing deadline" to become an unenrolled candidate was not considered a sufficient burden. Id. at 42. The same conclusion was reached by the Supreme Judicial Court – in essence, the Disaffiliation Statutes' scheme does not create an unconstitutional burden by blocking Gill from having "the benefits of being an independent and a [Republican] at the same time. This [he] cannot have." Metros, 396 Mass. at 165.[2] Against this legal backdrop and considering the allegations presented here, the Court concludes that any burden imposed by the Disaffiliation Statutes is outweighed by the state's interest in operating fair and orderly elections. Therefore, as to Gill's claim his

---

[2] Moreover, Gill's argument that he lacked knowledge of the Special Election date before the ninety-day deadline for the Special Election, thus distinguishing McClure and Metros, remains unpersuasive. In response to the same argument raised in support of his motion for a preliminary injunction, the Court noted that Gill "could have run a write-in campaign in the special election" which would have allowed him to choose between running as a Republican, unenrolled or write-in candidate in the General Election. D. 14 at 6.

constitutional rights were violated by the intersection of the Disaffiliation Statutes as to the Special Election, the Court concludes Gill has not stated a claim.

For all of the reasons, Gill has failed to state a plausible claim against Galvin.

## VI. Conclusion

Accordingly, the Court ALLOWS Galvin's motion to dismiss, D. 15.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge